UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| C.L.T., <br><br>                Plaintiff, <br><br>     vs. <br><br> FRANK BISIGNANO, COMMISSIONER OF SSA; <br><br>             Defendant. | 4:25-CV-04131-VLD <br><br><br> MEMORANDUM OPINION AND ORDER |

**INTRODUCTION**

C.L.T. seeks judicial review of the Commissioner's final decision denying

his application for social security benefits under Title II and Title XVI of the

Social Security Act.[1]  C.f. Docket No. 5.  Mr. T. requests that this court remand

---

[1] SSI benefits are sometimes called "Title XVI" benefits, and SSD/DIB benefits are sometimes called "Title II benefits."  Receipt of both forms of benefits is dependent upon whether the claimant is disabled.  The definition of disability is the same under both Titles.  The difference--greatly simplified--is that a claimant's entitlement to SSD/DIB benefits is dependent upon one's "coverage" status (calculated according to one's earning history), and the amount of benefits are likewise calculated according to a formula using the claimant's earning history.  There are no such "coverage" requirements for SSI benefits, but the potential amount of SSI benefits is uniform and set by statute, dependent upon the claimant's financial situation, and reduced by the claimant's earnings, if any.  Title II benefits may include a 12-month period of benefits retroactive to the date of application; Title XVI benefits are not retroactive to the application date.  SSR 83-20.  There are corresponding and usually identical regulations for each type of benefit.  See e.g., 20 C.F.R. § 404.1520 and § 416.920 (evaluation of disability using the five-step procedure under Title II and Title XVI).  In this case, Mr. W. filed his application for both types of benefits.  AR 10.  His coverage status for SSD benefits expires on December 31, 2026.  AR 13.  In other words, in order to be

the matter for either payment of benefits or further administrative proceedings.
Id. at 9.  The parties consented to this magistrate judge deciding their case
pursuant to 28 U.S.C. § 636(c).  See Docket No. 5.

**FACTS**

**A.    Application for Disability**

Mr. T. applied for disability benefits alleging a date of disability on April
1, 2021.  Administrative Record (AR) 183.  Mr. T. asserted the following
impairments: post-traumatic stress disorder (PTSD), spot on lung, high
cholesterol, arthritis, irritable bowel syndrome (IBS), diverticulitis,[2] coughing
and "pass[ing] out" during a cystoscopy,[3] and convulsions.  AR56.  At issue in
this appeal is solely whether the administrative law judge (ALJ) properly
explained a purported discrepancy in testimony regarding Mr. T.'s need for
bathroom breaks and the hypothetical posed to the Vocational Expert (VE).
Accordingly, the court discusses below only the records pertaining to Mr. T.'s
IBS.

---

entitled to Title II benefits, Mr. W. must prove he is disabled on or before that
date.  Throughout this opinion the court cites to only one C.F.R. provision
unless there is a difference between the two parallel provisions.

[2] Diverticulitis is "[i]nflammation of a diverticulum, which is a sac or pouch
coming off a main cavity of an organ." *Diverticulitis*, ATT'YS' DICTIONARY OF MED.
In the context of Mr. T.'s case, diverticulitis more particularly refers to
"inflammation of irregular bulging pouches in the wall of the large intestine."
Mayo Clinic, *Diverticulitis* (October 22, 2024),
https://www.mayoclinic.org/diseases-conditions/diverticulitis/symptoms-
causes/syc-20371758.  One symptom of diverticulitis is "[c]hanges in stool,
including sudden diarrhea or constipation."  Id.

[3] A cystoscopy is an examination of the interior of the urinary bladder.
*Cystoscopy*, ATT'YS' DICTIONARY OF MED.

**B.** **Medical Evidence.**

While Mr. T.'s medical records are voluminous, very few reference his IBS. One provider noted on December 11, 2020, that Mr. T. had "no loss of control of bowels or bladder." AR409. Providers noted that Mr. T.'s bowel movements were unchanged on June 11, 2021, June 22, 2022, June 1, 2023, and December 4, 2023. AR395-96, AR362, AR575-76, AR633-34, AR822-23.

At an appointment on December 17, 2021, one provider wrote that Mr. T. "denies incontinence of bowel/bladder with episodes. States episodes are fairly random, but will often occur with swallowing liquids." AR387-89. At another appointment on July 13, 2022, Mr. T. complained of "mild GI upset." AR348-49. Mr. T. reported diarrhea as a side effect of his medications at an appointment on August 11, 2022. AR344-45.

At an appointment on December 6, 2022, one provider noted that Mr. T. reported that his bowel movements were loose and watery since 2009, and that he would have these stools 5-6 times a day and always after a meal. AR329. The provider noted that Mr. T. had taken Pepto Bismol on occasion but had not tried Imodium. At an appointment on July 5, 2023, Mr. T. denied bowel incontinence. AR569-70.

On December 9, 2023, Mr. T. met with Cali Clark, D.O., for a physical consultative examination. AR791-94. Based upon her examination, Dr. Clark diagnosed Mr. T. with IBS. AR793. During the examination, Mr. T. reported that he had multiple episodes of watery, loose stools throughout the day. AR791. Dr. Clark noted that Mr. T. "wakes up and has a bowel movement,

3

then has one after every time he eats." Id.  Mr. T. also reported "crampy

intermittent abdominal pain." Id.

On January 5, 2024, Mr. T. met with Dr. Atman Shah for an examination

of his left lung.  AR878.  As part of that examination, Mr. T. reported "having

bright red blood in his stool as well as constant diarrhea." AR879.  Dr. Shah

noted that Mr. T.'s last colonoscopy was in February 2023 and had no

significant findings.  Id.  Dr. Shah recommended that Mr. T. meet with a

gastrointestinal specialist.  Id.

**C.    Non-Medical Evidence**

Mr. T. filled out a function report on September 17, 2023.  AR256-63.  In

that report, Mr. T. noted that he had been diagnosed with IBS and required

"frequent bathroom visits." AR256.  When asked "[d]escribe what you do from

the time you wake up until going to bed," Mr. T. listed "go to the bathroom"

twice.  AR257.  For two of the medications that Mr. T. noted he was taking,

Meloxicam and Albuterol, Mr. T. listed diarrhea as a side effect.  AR263.

**D.    Mr. T.'s Hearing Before the ALJ**

A hearing before ALJ Robert Kelly was held on May 20, 2024.  AR35.

Mr. T., his attorney, and VE Theresa Wolford appeared telephonically.  Id.  At

the hearing, Mr. T. described his IBS.  He said "I'll have to go to the bathroom

sometimes three times in an hour. It's either gas or explosive diarrhea. It

doesn't seem to matter what I eat, but—because sometimes I go for three hours

without an issue, but usually about once an hour." AR43.  Mr. T. described

the urgency of his bowel movements, saying that when he feels an urge, he

"ha[s] to go immediately." AR44.  If he doesn't go immediately, he "ha[s] an

accident," which occurs about once every other day.  Id.  When he has

accidents, it takes roughly 10-15 minutes for him to clean up.  Id.  Mr. T. said

that he takes Imodium every day for his IBS but still struggles with it.  AR48.

> The ALJ then presented the following hypothetical to VE Wolford:

> Please assume a person the Claimant's age, education, and past
> work experience per your previous classifications.  Hypothetical #1:
> this person can perform light work as defined in the regulations.
> The person can lift, carry, push, and pull 20 pounds occasionally,
> 10 pounds frequently.  This person can stand and/or walk off and
> on for six hours during an eight-hour workday with standard
> breaks, can sit for six hours during an eight-hour workday with
> standard breaks.  This person should never climb ladders or
> scaffolds.  This person can occasionally stoop, crouch, or climb
> ramps or stairs.  This person can frequently but not constantly
> perform reaching, handling, fingering.  The person should avoid
> concentrated exposure to temperature extremes and vibration.
> The person can tolerate only occasional concentrated exposure to
> atmospheric conditions as defined in the SCO such as dust, odors,
> gases, fumes, or poor ventilation, not including his own smoking
> and vaping.  This person can avoid ordinary workplace hazards,
> but should have no exposure to hazards such as unprotected
> heights or dangerous unguarded machinery.  This person can
> tolerate occasional interaction with supervisors and coworkers and
> the general public.  And this person can tolerate frequent changes
> in a routine work setting . . .  And on average, this person will be
> off task for up to 5% of the workday for restroom breaks.

AR49-50.

Based on that hypothetical, the ALJ asked VE Wolford whether, in her

opinion, a person with that residual functional capacity could perform Mr. T.'s

past work.  VE Wolford responded, "I'm sorry, I was on—yes, I was on mute.

What was the off-task percentage, Your Honor?"  AR50-51.  The ALJ

responded, "Up to 5%."  AR51.  VE Wolford responded, "Okay, thank you. No,

the past work would not remain."  Id.  The ALJ then asked whether a person

with that residual functional capacity could perform other unskilled work in the national economy, and VE Wolford responded yes: as a cleaner, housekeeping (DOT code 323.687-014), routing clerk (DOT code 222.687-022), or cafeteria attendant (DOT code 311.677-010). AR51.

Counsel for Mr. T. examined VE Wolford. Mr. T.'s attorney asked "Now, if you did have somebody who just would be taking additional breaks, and these breaks would be two different breaks for ten minutes each at a random, unpredictable time during the day, would that allow for any of the jobs you identified?" AR52. VE Wolford replied, "No, it would not." Id.

**E.      The ALJ's Decision**

On June 4, 2024, the ALJ denied Mr. T.'s application for benefits in a written decision. AR15-27. The ALJ determined that Mr. T. had "acquired sufficient quarters of coverage to remain insured through December 31, 2026." AR16. The ALJ also determined that Mr. T. had "not been under a disability within the meaning of the Social Security Act from April 1, 2021, through" June 4, 2024, the date of the decision. Id. The ALJ confirmed that Mr. T. had not engaged in substantial gainful activity since April 1, 2021, the alleged onset date. AR17.

The ALJ determined that Mr. T. had the "following severe impairments: lumbar and cervical degenerative disc disease and facet arthropathy;[4]

---

[4] Arthropathy is "[a]ny disease of a joint or of joints." *Arthropathy*, ATT'YS' DICTIONARY OF MED.

emphysema;[5] conversion/seizure disorder; irritable bowel syndrome (IBS); depression; anxiety; and post-traumatic stress disorder (PTSD)." Id.  The ALJ noted the presence of other impairments which he considered to be non-severe, including hypertension, hyperlipidemia, left-hip trochanteric bursitis, obesity, hearing loss in the right ear, and lung cancer.  AR18.

The ALJ noted that Mr. T. had been treated for gastrointestinal issues, with a history of IBS and diverticulosis, but without any significant treatment. AR22.  Mr. T. reported "constant diarrhea" as well as bright red blood in his stools.  Id.  At the time of his consultative examination in December 2023, Mr. T. reported experiencing multiple episodes of watery, loose stools throughout the day, as well as intermittent campy abdominal pain.  AR22-23.

The ALJ determined Mr. T.'s residual functional capacity (RFC) as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with some additional limitations.  Specifically, the claimant can: Lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; can stand and/or walk off and on, for 6 hours during an 8-hour workday with standard breaks; can sit for 6 hours during an 8-hour workday with standard breaks; should never climb ladders or scaffolds; can occasionally stoop, crouch, or climb ramps or stairs; can frequently, but not constantly, perform reaching, handling or fingering; should avoid concentrated exposure to temperature extremes and vibration; can tolerate only occasional concentrated exposure to atmospheric conditions (as defined in the SCO) such as dust, odors, gasses, fumes, or poor ventilation, not including his own smoking or vaping; can avoid ordinary workplace hazards, but should have no exposure to hazards such as unprotected heights, or dangerous, unguarded machinery; can tolerate occasional interaction with supervisors, co-workers and the general public;

---

[5] Emphysema is "[t]he presence of air in the delicate tissue between the miniature air sacs of the lungs." *Emphysema,* ATT'YS' DICTIONARY OF MED.

can tolerate frequent changes in a routine work setting; ***and, on
average, would be off-task for up to 5% of the workday for
restrooms breaks.***

AR20 (emphasis added).

In light of this RFC finding, the ALJ concluded that "there are jobs that

exist in the national economy that [Mr. T.] can perform," including cleaner

(housekeeping), routing clerk, and cafeteria attendant.  AR 25-26.  Accordingly,

the ALJ found that Mr. T. "has not been under a disability, as defined in the

Social Security Act, from April 1, 2021, through the date of this decision [June

4, 2024]."  AR26.  Mr. T.'s appeal of the ALJ's decision was rejected.  AR1-6.

## DISCUSSION

### A.    Standard of Review

When reviewing a denial of benefits, the court will affirm the

Commissioner's final decision if it is supported by 'substantial evidence in the

record as a whole."  Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009).

"[S]ubstantial evidence [is] defined as 'more than a mere scintilla.  It means

such relevant evidence as a reasonable mind might accept as adequate to

support [the Commissioner's] conclusion.' "  Klug v. Weinberger, 514 F.2d 423,

425 (8th Cir. 1975) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

"This review is more than a search of the record for evidence supporting the

[Commissioner's] findings, and requires a scrutinizing analysis, not merely a

rubber stamp of the [Commissioner's] action."  Scott ex rel. Scott v. Astrue, 529

F.3d 818, 821 (8th Cir. 2008) (citations and internal quotation marks omitted).

Yet, "[i]n conducting [its] limited and deferential review of the final agency

8

determination under the substantial-evidence standard, [the court] must view the record in the light most favorable to that determination." Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018).

The court must consider evidence that detracts from the Commissioner's decision, along with the evidence that supports it. Minor, 574 F.3d at 627. The Commissioner's decision may not be reversed "merely because substantial evidence would have supported an opposite decision." Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). "[I]f it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings," the Commissioner must be affirmed. Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993) (quoting Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). "In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record." Mittelstedt v. Apfel, 204 F.3d 847, 851 (8th Cir. 2000) (citations omitted).

The court must also review the decision by the ALJ to determine if an error of law has been committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992); 42 U.S.C. § 405(g). Specifically, a court must evaluate whether the ALJ applied an erroneous legal standard in the disability analysis. "Erroneous interpretations of law will be reversed." Walker ex rel. Walker v. Apfel, 141 F.3d 852, 853 (8th Cir. 1998) (citation omitted). The Commissioner's conclusions of law are only persuasive, not binding, on the reviewing court.

9

Smith, 982 F.2d at 311 (finding "appropriate deference" should be given to the

SSA's interpretation of the Social Security Act).[6]

**B.      The Disability Determination and the Five-Step Procedure**

For a claimant to qualify "for disability insurance benefits, [she] has the

burden of establishing the existence of a disability" as defined by the Social

Security Act.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001)

(citation omitted).  As pertinent here, the definition of "disability" under the

Social Security Act is the "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  The impairment must be sufficiently severe so as to render the

claimant unable to do her previous work, or any other substantial gainful

activity which exists in the national economy.  § 423(d)(2).  Where alcoholism

or drug addiction would be a material contributing factor in the

Commissioner's determination, a person is not considered disabled.

§ 423(d)(2)(C).

The ALJ applies a five-step procedure to decide whether an applicant is

disabled.  This sequential analysis is mandatory for all SSI and SSD/DIB

applications.  Smith v. Shalala, 987 F.2d 1371, 1373 (8th Cir. 1993); 20 C.F.R.

---

[6] Whether deference in this context survives the effects of Loper Bright
Enterprises v. Raimondo remains an open question.  See generally 603 U.S.
___, 144 S. Ct. 2244 (2024).  Until overruled, this court remains bound by its
circuit's precedent.  Hood v. United States, 342 F.3d 861, 864 (8th Cir. 2003).

§ 404.1520.  The five steps are as follows:

**Step One:**  Determine whether the applicant is presently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i), (b).  If the applicant is engaged in substantial gainful activity, she is not disabled, and the inquiry ends at this step.  § 404.1520(a)(4)(i).

**Step Two:**  Determine whether the applicant has an impairment or combination of impairments that are severe, i.e., whether any of the applicant's impairments or combination of impairments significantly limit her physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c).  If there is no such impairment or combination of impairments, the applicant is not disabled, and the inquiry ends at this step.  Id.  "The regulations prescribe a special procedure for analyzing mental impairments" to determine whether they are severe.  Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (citing 20 C.F.R. § 404.1520a).

**Step Three:**  Determine whether any of the severe impairments identified in step two meets or equals a "listed impairment" in Appendix 1, Subpart P, Part 404.  20 C.F.R. § 404.1520(a)(4)(iii), (d).  If an impairment meets or equals a listed impairment, the applicant will be considered disabled without further inquiry. Bartlett v. Heckler, 777 F.2d 1318, 1320 n.2 (8th Cir. 1985).  This is because the regulations recognize the listed impairments as so severe that they prevent a person from pursuing any gainful work. Heckler v. Campbell, 461 U.S. 458, 460 (1983).  If the applicant's impairment(s) are severe but do not meet or equal a listed impairment, the ALJ must proceed to step four.  A special procedure also applies when determining whether a severe mental impairment meets or equals a listed impairment.  20 C.F.R. § 404.1520a(c)(2).

**Step Four:**  Determine whether the applicant is capable of performing past relevant work.  To make this determination, the ALJ considers the limiting effects of all the applicant's impairments, even those that are not severe, to determine the applicant's residual functional capacity (RFC).  If the applicant's RFC allows her to meet the physical and mental demands of her past work, she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), (e)– (f); 404.1545(e).  If the applicant's RFC does not allow her to meet the physical and mental demands of her past work, the ALJ must proceed to step five.  Cf. 20 C.F.R. § 404.1520(f).

**Step Five:**  Determine whether any substantial gainful activity exists in the national economy which the applicant can perform.

To make this determination, the ALJ considers the applicant's RFC, along with her age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v), (g); Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citation omitted).  If the applicant can "make an adjustment to other work," the applicant is not disabled.  If they cannot, the applicant will be found to be disabled. § 404.1520(a)(4)(v).

**C.    Burden of Proof**

The plaintiff bears the burden of proof at steps one through four of the five-step inquiry.  Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir. 1994); 20 C.F.R. § 404.1512(a).  The burden of proof shifts to the Commissioner at step five.  Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994) (citation omitted). "This shifting of the burden of proof to the Commissioner is neither statutory nor regulatory, but instead, originates from judicial practices."  Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999).  The burden shifting is "a long-standing judicial gloss on the Social Security Act."  Walker v. Bowen, 834 F.2d 635, 640 n.3 (7th Cir. 1987).  But "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."  Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

**D.    Whether the ALJ's Decision Was Supported by Substantial Evidence**

The issue for this court to decide is a narrow one.  Mr. T. argues that the ALJ's step five determination is unsupported by substantial evidence because the VE that the ALJ purported to rely on offered testimony that undermined the ALJ's determination.  Docket No. 6, at 10.  Specifically, the VE testified that no work was available in the national economy if Mr. T. had to take two

12

different bathroom breaks for ten minutes each at a random, unpredictable time during the day.  AR52.

The ALJ determined that Mr. T was able to perform work as a housekeeper, routing clerk, and cafeteria attendant.  AR26.  The ALJ explained that he arrived at that conclusion "[b]ased on the testimony of the vocational expert."  Id.  While the VE identified jobs that were compatible with being off task for five percent of the workday, she clarified that those jobs could not be performed by someone who needed to take those breaks at random, unscheduled times—such as for a pressing bathroom emergency.  Mr. T. says that the ALJ's failure to address the distinction between time off task and unscheduled breaks means the ALJ failed to meet his burden of proof at Step Five to identify work that Mr. T. could perform within the national economy.  Docket No. 6, at 11, 14.

The Eighth Circuit considered a somewhat analogous situation in Travis v. Astrue, 477 F.3d 1037 (8th Cir. 2007).  There, a VE added a qualifier to his answer to a question posed by the ALJ.  Id. at 1043.  The ALJ asked whether a claimant's poor ability to follow work rules would affect her ability to perform the job of cashier, and the VE responded, "normally I would say yes except she has a fair ability to follow simple instructions and it's an unskilled job."  Id.  He also said the job would require a "level of attention and concentration . . . . I guess there could be an issue there if that in and of itself would be enough to keep a person from performing that job."  Id.

The ALJ found the claimant was not disabled, and the claimant argued that the VE's equivocal response undermined the ALJ's finding.  Id.  The court found that the VE merely stated his opinion and then raised an issue for the ALJ's consideration—he did not change the hypothetical or rely on criteria not mentioned by the ALJ.  Id.  Importantly, the court found that the VE's equivocal response did not contradict his prior response to the ALJ's hypothetical question.  Id.

The same cannot be said in Mr. T.'s case.  Here, the VE answered that Mr. T. could perform certain jobs while being off task for five percent of the day for restroom breaks.  Later, when asked whether Mr. T. could perform these jobs if he needed two different breaks for ten minutes each[7] at a random, unpredictable time during the day, the VE said no.  The only difference between those two standards is that one specifies that bathroom breaks are random and unpredictable.  But, aside from the most regular of individuals, bathroom breaks are typically unscheduled.  Indeed, for someone with IBS, they are both unscheduled and cannot be delayed to a later, scheduled time.

Mr. T.'s situation is more analogous to the one in Overman v. Astrue, 546 F.3d 456 (7th Cir. 2008).  There, the ALJ asked a VE whether there were jobs in the region that a person with the claimant's RFC, which included limitations on fine discrimination and significant reading, could perform.  Id. at 460.  The VE responded that that individual could work as a hand packager or

---

[7] This is the equivalent of saying five percent of the workday.  The workday is 8 hours, or 480 minutes.  Two ten-minute breaks, totaling twenty minutes, is 4.17% of the workday.

rack room worker.  Id.  On cross-examination, claimant's counsel asked whether the VE's opinion would change if the hypothetical individual "couldn't do close up work because of finger problems, hand problems, that sort of thing."  Id. at 461.  The VE responded yes and clarified that that limitation would eliminate both of the jobs he listed, meaning that there would be no jobs in the national economy for that individual to perform.  Id.

The ALJ denied the claimant benefits, concluding at step five that the claimant could work as a hand packager or rack room worker.  Id.  The ALJ stated that in reaching this conclusion, he gave "great weight" to the VE's testimony, which the ALJ found to be "credible, persuasive, and consistent with the record as a whole."  Id. at 462.

The Seventh Circuit determined that the ALJ erred and that remand was required.  The court observed that the VE contradicted himself "first by saying that an inability to do 'close up work' would eliminate both jobs and second by saying that [the claimant] would be unable to work as a hand packager if that position required reading."  Id. at 463.  "The ALJ's reliance upon the VE's testimony without developing the record and obtaining a 'reasonable explanation' for the conflicts violated SSR 00-4p."  Id. at 464.

Likewise, a district court required remand for a situation similar to Mr. T.'s in Paugh v. Kijakazi, No. 1:22CV100, 2023 WL 5062064, at *5 (N.D.W. Va. July 5, 2023), adopted Paugh v. Comm'r of Soc. Sec. Admin., No. 1:22-CV-100, 2023 WL 5059549 (N.D.W. Va. Aug. 8, 2023).  There, a VE testified that a claimant "could perform reasoning level 2 occupations while also testifying that

a person limited to 'simple, routine tasks,' as [claimant] is per his RFC, cannot

carry out detailed written and oral instructions, which are present in reasoning

level 2 jobs." Id. at *4.  The ALJ's failure to account for that contradiction

required remand.  Id. at *7.

The government disagrees with this court's conclusion.  It contends that

"no inconsistency exists in VE Wolford's testimony, and this Court should

strive to harmonize the evidence regarding the ALJ's findings rather than

nitpick the decision." Docket No. 10, at 5-6.  The court disagrees.  The VE

espoused two contradictory propositions: (1) that Mr. T. could work in the

national economy if he could be off task for five percent of the day (24 minutes)

for restroom breaks, and (2) that all the jobs the VE listed could not be

performed if Mr. T. needed two restroom breaks for ten minutes each (4.17% of

an 8 hour workday) and those restroom breaks were random and

unpredictable.  The only way to harmonize those two statements is to conclude

that Mr. T.'s bathroom breaks would be non-random and predictable.  But as

the medical evidence establishes, someone with IBS cannot perfectly predict

when they will need to use the bathroom.  Accordingly, the VE's testimony was

inconsistent, and the ALJ was required to address that inconsistency when

relying on the VE's testimony.

The government also argues that Mr. T.'s counsel added limitations of

"two additional breaks for ten minutes at a random and unpredictable time for

any reason." Docket No. 10, at 6.  But that limitation is implicit in the ALJ's

hypothetical, which assumes five percent of the day will be spent on restroom

16

breaks.  And, as mentioned above, restroom breaks for someone with IBS are inherently unscheduled and random.

It is possible that the VE understood Mr. T.'s attorney's statement to consider "somebody who just would be taking additional breaks" as taking breaks *in addition* to the five percent off-task number that the ALJ provided in his hypothetical.  AR52.  But if that ambiguity existed, the ALJ would nevertheless have a duty to develop the record to resolve it.  See Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.").

In conclusion, the VE contradicted herself at the May 20, 2024, hearing. The ALJ relied on only the first part of that testimony without addressing the later inconsistency.  Accordingly, the ALJ's decision was not supported by substantial evidence in the record as a whole.  Remand is therefore required.

**E.    Type of Remand**

For the reasons discussed above, the Commissioner's denial of benefits is not supported by substantial evidence in the record.  Mr. T. requests reversal of the Commissioner's decision with remand and instructions for an award of benefits, or in the alternative reversal with remand and instructions to reconsider his case.

Section 405(g) of Title 42 of the United States Code governs judicial review of final decisions made by the Commissioner of the Social Security Administration.  It authorizes two types of remand orders: (1) sentence four

remands and (2) sentence six remands.  A sentence four remand authorizes the court to enter a judgment "affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

A sentence four remand is proper when the district court makes a substantive ruling regarding the correctness of the Commissioner's decision and remands the case in accordance with such ruling.  Buckner v. Apfel, 213 F.3d 1006, 1010 (8th Cir. 2000).  A sentence six remand is authorized in only two situations: (1) where the Commissioner requests remand before answering the Complaint; and (2) where new and material evidence is presented that for good cause was not presented during the administrative proceedings.  Id. Neither sentence six situation applies here.

A sentence four remand is applicable in this case.  Remand with instructions to award benefits is appropriate "only if the record overwhelmingly supports such a finding."  Buckner, 213 F.3d at 1011.  In the face of a finding of an improper denial of benefits, but the absence of overwhelming evidence to support a disability finding by the Court, out of proper deference to the ALJ the proper course is to remand for further administrative findings.  Id.; Cox v. Apfel, 160 F.3d 1203, 1210 (8th Cir. 1998).

In this case, reversal and remand is warranted not because the evidence is overwhelming, but because the record evidence should be clarified and properly evaluated.  See also Taylor v. Barnhart, 425 F.3d 345, 356 (7th Cir. 2005) (an award of benefits by the court is appropriate only if all factual issues

18

have been resolved and the record supports a finding of disability).  Therefore, a remand for further administrative proceedings is appropriate.

## CONCLUSION

Based on the foregoing law, administrative record, and analysis, this magistrate judge ORDERS that the Commissioner's decision denying Mr. T.'s application for disability benefits be REVERSED and REMANDED for reconsideration pursuant to 42 U.S.C. § 405(g), sentence four.  On remand, the Commissioner is directed to reconsider whether any substantial gainful activity exists in the national economy which Mr. T. can perform at step five, given the totality of the evidence, including medical evidence.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

19

DATED this 29th day of January, 2026.

BY THE COURT:

*Veronica L. Duffy*

VERONICA L. DUFFY
United States Magistrate Judge